IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

MARK HANGEN, an individual

     Plaintiff,

v.

THE COUNTY OF MARQUETTE,
a Public Body Corporate,

     Defendant.

Case No.
Hon.

_____

## COMPLAINT AND JURY DEMAND

Plaintiff, Mark Hangen ("Plaintiff"), by and through his attorneys, Demorest Law Firm, PLLC, sets forth his Complaint against Defendant, The County of Marquette, Michigan, a Public Body Corporate (the "County"), as follows:

## PARTIES

1. Plaintiff is an individual who resides in Michigamme, Michigan.  He is a pilot who utilizes the services of Marquette Sawyer Regional Airport and the Fixed-Based Operator.

2. The County of Marquette is a governmental agency, organized and incorporated under the laws of the State of Michigan, with its principal place of business located at 234 West Baraga Avenue, Marquette, Michigan 49855.

## JURISDICTION AND VENUE

3. This is a civil action arising under Michigan law, the Fifth and the Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

4. This Court has subject matter jurisdiction over the claims arising under the United States Constitution and laws of the United States pursuant to 28 U.S.C. § 1331.

5.      This Court has subject matter jurisdiction over the pendent claims stated in this Complaint arising under Michigan law pursuant to 28 U.S.C. § 1367, as such claims are so related to the federal claim asserted herein as to form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b).  The Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims made herein occurred in this District.

**<u>GENERAL ALLEGATIONS</u>**

7.      The County owns and is responsible for the operation and management of the Marquette Sawyer Regional Airport located in Marquette County at 125 G Avenue, Gwinn, Michigan 49841 (the "Airport").

8.      The Airport is a federally obligated public use airport serving commercial passenger airlines, cargo carriers, emergency medical aviation, corporate flight departments and military-adjacent operations.

9.      Commercial aviation activities at the Airport are subject to the requirements and guidelines contained in the County's Minimum Standards for Commercial Aviation document (the "Standards Document"), which was approved by the County's Board of Commissioners (the "Commissioners") on November 7, 2018 (**EX 1**).

10.      At its July 5, 2023 Board Meeting, the Commissioners approved action to contract with Kubick Aviation Services ("Kubick") for providing Fixed Base Operator ("FBO") services at the Airport.

11.      The County entered into a FBO Limited Services Agreement with Kubick Aviation Services ("Kubick") effective as of July 31, 2023 (the "FBO Agreement") (**EX 2**).

12.     As stated in the FBO Agreement, the County required the services of Kubick to (a) provide adequate aeronautical services and facilities for the users of the Airport; (b) solidify the Airport's presence as the preeminent regional airport in the Upper Peninsula; and (c) promote the economic development of the Airport.

13.     As FBO for the Airport, and pursuant to the FBO Agreement, Kubick provides aviation related services to the County and users of the Airport, including: (a) inspection and maintenance of fuel storage facilities; (b) fuel delivery vehicles, capacity, inspections; (c) fueling services; (d) aviation line services; (e) aircraft maintenance and repair services; (f) collection of aircraft landing fees; (g) pilot/crew services; and (h) escort service through secured areas.

14.     Kubick has operated as the FBO for the Airport for over two years, successfully performing all of its obligations under the FBO Agreement and meeting the requirements contained in the Standards Document.

15.     On October 27, 2025, before official action was taken by the Commissioners to approve the County's action, the County's Attorney notified Kubick that the County was terminating the FBO Agreement without cause and providing them with the six months' advance notice required under the FBO Agreement (**EX 3**).

16.     On November 10, 2025, the Airport Advisory Board's Finance Committee (the "Finance Committee") met to discuss airport leases, revenue-generating opportunities, and the overall financial health of the airport.  They spent only 2.5 hours performing an initial review of over a dozen contracts and profit and loss documents.

17.     The Finance Committee, having been made aware of the County Administrator's termination notice already being sent to Kubick, recommended that the FBO service be provided

3

solely by the County and not contracted out to the private sector, stating that it would allow the County to generate a profit center for the good of the Airport (**EX 4**).

18. On November 13, 2025, the Airport Board of Advisors met and, among other things, approved the Finance Committee's recommendation to bring the FBO services in-house

19. . The November 13, 2025 meeting minutes only reflect one question being asked by an Advisory Board member regarding the FBO recommendation; Specifically, Board Member Christopher Germain asked about models for airport/local government run FBOs.

20. In response, County Administrator, Duane DuRay, responded that both private-run and airport-run FBOs are common (**EX 5**).

21. The Board of Commissioners held its regularly scheduled Board meeting on November 18, 2025.

22. David Erhart, Airport Manager, presented the Finance Committee's recommendations, which he noted were approved by the Airport Advisory Board, including bringing the FBO services in-house. With minimal discussion, the Commissioners voted 4-1 to accept in concept the Airport Advisory Board's recommendation that the County take over the FBO services and not put it out to the private sector for bidding or requests for proposal (**EX 6**).

23. At its November 25, 2025 special meeting (held with less than 24 hours' notice), the County's Board of Commissioners held a discussion regarding the County assuming the FBO operations at the Airport (**EX 7**).

24. A motion was made, but was voted down 3-2, to refer the issue back to the Airport's Board of Advisors for more information. Subsequently a motion was made, and passed 4-1, to accept the recommendation from the Airport's Board of Advisors to terminate the FBO Agreement with Kubick (**EX 7**).

4

25.     Just prior to the start of the November 25, 2025 special meeting, the Commissioners received documents containing financial projections related to taking over the FBO services.   At the meeting, they discussed these projections, and specifically the belief that taking over the FBO services would result in a net profit of $1.8 Million for the County.

26.     Upon information and belief, the Commissioners relied on a significantly deficient and incorrect financial projection when deciding to terminate the FBO Agreement and take over the FBO services.

27.     In response to a Freedom of Information Act request for "[f]inancial document(s) used for the decision: any financial analysis, spreadsheet, memo, report, or presentation (including exhibits/attachments) that was provided to, shown to, referenced by, or relied upon by the Board at the November 25, 2025 Special Board Meeting in connection with the decision to terminate the Fixed Base Operator (FBO) contract with Kubick" the County provided (among other things) a Profit and Loss Statement which projected a $1.8 Million net profit from a County operated FBO for calendar year 2026 (the "Projection") (**EX 8**).

28.     The Projection was based on the assumption of a $3.00 markup per gallon of fuel sold at the Airport, treating all such fuel sales as retail transactions.  The Projection did not take into account that more than 85% of the fuel sold at the Airport is sold at negotiated contract rates (not retail pricing) where the average markup is closer to $0.80 per gallon (**EX 8**) (**EX 9**).

29.     Changing the fuel sale price assumption to take these negotiated rates into account reduces the projected $1.8 Million profit to a $291,000.00 loss (**EX 9**).

30.     Upon information and belief, the Commissioners acted before holding a public hearing on the FBO matter and without performing due diligence related to: (a) environmental conditions at the Airport; (b) the status of Federal Aviation Administration ("FAA") compliance;

5

(c) an analysis of fuel operations;  (d) assessing the liability risks associated with bringing the FBO services in-house; (e) obtaining a feasibility study; (f) determining whether it could meet the requirements set forth in the Standards Document; or (g) determining whether it could meet the industry standard of care for FBO service providers.

31.    Upon information and belief, the Commissioners, none of whom possess professional aviation, airport management, or FBO operational experience, acted without first seeking advice from an independent expert in this field.

32.    Upon information and belief, the Commissioners acted without completing: (a) a multi-year financial analysis of FBO operations; (b) an independent revenue and expense forecast; (c) a capital reinvestment analysis; or (d) a determination of subsidy versus profit.

33.     Upon information and belief, the Commissioners acted without consulting the Airport's commercial users and carriers.

34.    Upon information and belief, the Commissioners acted without documenting any FAA District Office coordination.

35.    Upon information and belief, the Commissioners acted without determining the impact its decision would have on the Airport's federal grants assurances including, but not limited to, FAA Assurance 22 which prohibits unjust economic discrimination, and their ability to retain existing grants and obtain grants in the future.

## COUNT I

## VIOLATION OF THE MICHIGAN OPEN MEETINGS ACT

36.    All public bodies in Michigan must comply with the Open Meetings Act ("OMA"), M.C.L. § 15.261 et. seq.

37.     A public body includes any state or local governing body, including a board or commission, that is empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function. M.C.L. § 15.262(a)

38.     The County of Marquette (and its Board of Commissioners) is a public body subject to the OMA.

39.     The OMA requires the following of a public body: (a) to provide notice of its meetings to the public; (b) that its meetings be open to the public and held in a location available to the general public; and (c) that its decisions be made at a meeting open to the public. M.C.L. § 15.263(1) and (2) and M.C.L. § 15.265.

40.     The OMA also requires that all deliberations of a public body constituting a quorum of its members take place at a meeting open to the public.  M.C.L. § 15.263(3)

41.     On October 27, 2025, the County notified Kubick of its decision to terminate the FBO Agreement (**EX 3**).

42.     There is no public record of deliberations of the County Board of Commissioners, and/or a decision, regarding termination of the FBO Agreement prior to the October 27, 2025 termination notice to Kubick.

43.     The County and its Commissioners did not act in compliance with the OMA when it decided to terminate the FBO Agreement without first properly noticing and holding a public meeting for such purpose.

44.     A decision made by a public body may be invalidated if the public body does not act in compliance with the OMA. M.C.L. § 15.270(2).

7

45.     If a public body is not complying with the OMA, a person may commence a civil action to enjoin further non-compliance with the OMA.  M.C.L. § 15.271(1).

46.     The court shall award a plaintiff its court costs and attorney fees if it succeeds in its action for relief against a public body for failing to comply with the OMA.  M.C.L. § 15.271(4).

WHEREFORE, Plaintiffs respectfully request this Court to:

a.     Invalidate the County and its Commissioners' approval of the termination of the FBO Agreement with Kubick;

b.     Enjoin the County from taking further action in violation of the OMA; and

c.     Award Plaintiff his court costs and attorney's fees.

## COUNT II

### VIOLATION OF SUBSTANTIVE DUE PROCESS

47.     The 5th Amendment to the United States Constitution provide that the government shall not deprive any person of life, liberty, or property, without due process of law.  The 5th Amendment was made applicable to Marquette County through the 14th Amendment.

48.     Plaintiff has a property interest in the Airport and its operations as a resident of Marquette County and frequent user of the Airport.

49.     Substantive due process requires that government actions not be arbitrary and capricious.

50.     The County terminated the FBO Agreement with Kubick and the County's Commissioners decided to take over the FBO services without performing any meaningful due diligence.  They failed to:

a.     assess environmental conditions at the Airport;

b.     determine the status of  FAA compliance;

c.     conduct an analysis of fuel operations;

8

d.    assess the liability risks associated with bringing the FBO services in-house;

e.    obtain a feasibility study;

f.    determine whether it could meet the requirements set forth in the Standards Document;

g.    determine whether it could meet the industry standard of care for FBO service providers;

h.    seek advice from an independent expert in the field;

i.    perform a multi-year financial analysis of FBO operations;

j.    obtain an independent revenue and expense forecast;

k.    conduct a capital reinvestment analysis;

l.    make a determination of subsidy versus profit;

m.    consult the Airport's commercial users and carriers;

n.    document any FAA District Office coordination;

o.    determine the impact its decision would have on the Airport's federal grants assurances including, but not limited to, FAA Assurance 22 which prohibits unjust economic discrimination; or

p.    assess their ability to retain existing grants and obtain grants in the future.

51.    The County and its Commissioners relied on a significantly deficient and incorrect financial projection when it terminated the FBO Agreement with Kubick and decided to take over the FBO services.

52.    The County and its Commissioners acted in an arbitrary and capricious manner when it terminated FBO Agreement and decided to take over the FBO services at the Airport.

53.    The County violated Plaintiff's constitutionally protected substantive due process rights when its arbitrary and capricious actions deprived him of his property interest in the Airport and its operations.

9

WHEREFORE, Plaintiffs respectfully request this Court to:

a.      Enjoin the County from terminating the FBO Agreement with Kubick and bringing the FBO services in-house until they have performed meaningful due diligence to include the actions set forth above; and

b.      Award Plaintiff his court costs and attorney's fees.

Respectfully submitted,

DEMOREST LAW FIRM, PLLC

By: _/s/  Mark S. Demorest_____
Mark S. Demorest (P35912)
Randall J. Soverinsky (P51815)
Attorneys for Plaintiff
415 S. West St., Suite 300
Royal Oak MI 48067
(248) 723-5500
mark@demolaw.com
randy@demolaw.com

Dated:  February 4, 2026

## JURY DEMAND

Plaintiff, Mark Hangen, hereby demands a trial of this matter by jury.


Respectfully submitted,

DEMOREST LAW FIRM, PLLC

By: _/s/  Mark S. Demorest_____
Mark S. Demorest (P35912)
Randall J. Soverinsky (P51815)
Attorneys for Plaintiff
415 S. West St., Suite 300
Royal Oak MI 48067
(248) 723-5500
mark@demolaw.com
randy@demolaw.com

Dated:  February 4, 2026

## INDEX OF EXHIBITS

EX 1        Minimum Standards for Commercial Aviation document

EX 2        FBO Limited Services Agreement

EX 3        October 27, 2025 notification of FBO Agreement termination

EX 4        Finance Committee recommendation

EX 5        November 13, 2025 approval of Airport Board of Advisors

EX 6        November 18, 2025 Board of Commissioners' vote

EX 7        November 25, 2025 Board of Commissioners' special meeting vote

EX 8        County's Profit and Loss Statement

EX 9        Change in fuel sale price assumption

Hangen, Mark/Marquette Sawyer Regional Airport (2092)/1 Draft Pleadings/2026 02 04 Complaint.docx